# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| ACE MORTGAGE FUNDING, LLC | ) Case No. 08-12645 (CSS) |
| | ) |
| Debtors. | ) |

## OPINION[1]

| | |
|---|---|
| COZEN O'CONNOR | HUNTON & WILLIAMS LLP |
| | |
| John T. Carroll, III | Michael G. Wilson |
| 1201 N. Market Street | Jason W. Harbour |
| Suite 1400 | Riverfront Plaza, East Tower |
| Wilmington, DE  19801 | 951 East Byrd Street |
| | Richmond, Virginia  23219-4074 |
| Counsel to the Trustee | |
| George L. Miller | -and- |
| | |
| | Craig V. Rasile |
| | Victor de Diego |
| | 1111 Brickell Avenue, Suite 2500 |
| | Miami, Florida  33131 |
| | |
| | Counsel for Richard Hall, Robert Gregory, Platinum Holding, Inc. and R & R Holdings, LLC |

Dated:  April 27, 2011

Sontchi, J. _____

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

# INTRODUCTION

Before the Court is a motion filed by a landlord seeking allowance and payment as an administrative expense of unpaid post-petition rent. The Chapter 7 trustee asserts two defenses to the motion: (i) a pre-petition assumption and assignment agreement released the debtor from any obligations under the lease; and (ii) any rent due under the lease is not entitled to administrative priority because the landlord changed the locks immediately after the petition date and had possession and control over the leased premises. Thus, the rent was not an actual and necessary cost and expense of preserving the estate.

Under the plain meaning of the assumption and assignment agreement and the subsequent course of conduct by the parties, the debtor retained possession of a portion of the premises under the lease as well the concomitant obligations, including the rental obligation. Nonetheless, the landlord took possession and control of the leased premises immediately after the petition date and provided only limited access to the trustee. Thus, the rent due under the lease was not an actual and necessary cost and expense of preserving the estate and is not entitled to administrative priority.

# JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and Fed. Bankr. P. 9014. Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G).

# FACTUAL BACKGROUND

Ace Mortgage Funding, LLC (the "Debtor"), as tenant, and R&R Holdings, LLC ("R&R"), as landlord, are parties to a lease dated December 15, 2003 (the "Beachway

Lease"), for certain commercial real property located at 777 Beachway Drive, Indianapolis, IN 46224 (the "Leased Premises").  The Beachway Lease was amended on December 11, 2003, and again on November 19, 2007.  The Debtor has been in default under the terms of the Beachway Lease since March 2008 for failure to pay rent.  On November 5, 2008, the Debtor filed a voluntary petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code (the "Petition Date"), and George L. Miller was subsequently appointed Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Trustee").

The Beachway Lease, as amended, required the Debtor to pay a Minimum Monthly Rental of $49,375.00 for the months of November and December 2008; the Minimum Monthly Rental increased to $50,000.00 for the months of January, February, and March 2009.  In addition, §8 of the Beachway Lease requires the Debtor to make payments for taxes and insurance on the Leased Premises, which, under §3 of the Beachway Lease, would constitute Additional Rent if advanced by R&R.  Finally, under §6 of the Beachway Lease, any past due payments are subject to a late charge.

The Trustee has not moved to reject the Beachway Lease.  The Trustee has paid neither the post-petition Minimum Monthly Rental nor the taxes and insurance on the Leased Premises.  R&R is seeking payment of the Minimum Monthly Rental, the taxes and insurance on the Leased Premises, and late fees, for the period of November 2008 through March 2009.  The total Minimum Monthly Rental due for November 2008, on a prorated basis, is $42,791.67, and the total Minimum Monthly Rental due for December 2008 through March 2009 is $199,375.00.  R&R also advanced taxes and insurance in the amount of $30,778.60 for the period of November 2008 through March 2009.  Finally,

late fees for the missed payments total $11,106.16. Thus, the total administrative claim sought is $284,051.43.

The Trustee contends that R&R has no administrative claim because the Debtor was released from *all* lease obligations under a 2005 transaction with private equity group, Roark Capital. Alternatively, the Trustee argues that the Debtor surrendered the Leased Premises on November 11, 2008, when Mr. Gregory informed the Trustee that the landlord had changed the locks, and allegedly told the Trustee "not to worry" about the rent. Thus, the rent due under the lease was not an actual and necessary cost and expense of preserving the estate and is not entitled to administrative priority.

   a. **The Roark Transaction**

The Trustee contends that the specific Debtor against whom R&R is seeking allowance of an administrative claim, Ace Mortgage Funding, LLC, was released from all Beachway Lease obligations pursuant to an Assignment and Assumption of Lease dated December 9, 2005 (the "Assignment and Assumption"). The Assignment and Assumption was executed in connection with a 2005 transaction with Roark Capital ("Roark").

Prior to the Roark transaction, Platinum Holdings, Inc. ("Platinum") owned three operating companies: Ace Mortgage Funding (the Debtor), Ace Imaging, and Archer Land Title. The offices of Ace Mortgage Funding, Archer Land Title, and Platinum were located in the three-story commercial office building on the Leased Premises. Ace Mortgage Funding, which was the tenant on the Beachway Lease, occupied the entire first floor, and a conference room on the third floor. Archer Land Title occupied the entire second floor (known as "Suite 200"), which it sublet from Ace Mortgage Funding.

Platinum occupied all of the third floor except for the conference room (known as "Suite 300"), which it also sublet from Ace Mortgage Funding.

On August 9, 2005, Platinum, Mr. Gregory, Mr. Hall, and Roark executed a Purchase Agreement, pursuant to which Platinum sold the three operating companies to a newly-created entity called Ace Holding Company, LLC ("Ace Holding"). Roark, through a special entity called Roark Ace Holding Corporation, acquired a 60 percent interest in Ace Holding, and Platinum owned the remaining 40 percent. After the Roark transaction, everyone who had been a Platinum Holdings employee became an Ace Holding employee.

Section 2.2(b)(vii) of the Purchase Agreement provides that at the closing, Platinum was required to deliver to Roark:

> (vii) the Assignment and Assumption of the lease agreement in form an substance reasonably satisfactory to the parties to this Agreement (the "Assignment and Assumption Agreement"), relating to the leased premises located at 777 Beachway Drive, Suite 300, Indianapolis, IN 46224, duly executed by [Ace Holding], as assignee, [Ace Mortgage Funding], as assignor and R&R Holdings, LLC, as landlord, duly executed by Richard M. Hall, in his capacity as President of R&R Holdings, LLC.

Accordingly, on December 9, 2005, Ace Mortgage Funding, Ace Holding, and R&R executed the Assignment and Assumption. The Trustee's argument relies almost entirely on the language of the Assignment and Assumption. In the recitals, the Assignment and Assumption states:

> Assignor [Ace Mortgage Funding] currently leases certain real property located at 777 Beachway Drive, Suite 300, Indianapolis, Indiana (the "Leased Property") from R&R Holdings, LLC, an Indiana limited liability company ("Landlord"), pursuant to a Commercial Office Lease between Landlord and Assignor dated June 1, 2003 (the "Lease").

Section 1(b) of the Assignment and Assumption provides that:

> (b) Assignee [Ace Holding] hereby accepts the foregoing assignment, effective as of the Closing Date, and hereby agrees to perform all of the terms and conditions of the Lease to be performed by Assignor on or after the Closing Date and assumes all of the liabilities and obligations of Assignor under the Lease arising or accruing on or after the Closing Date.

Finally, the "Consent to Assignment and Release" provision states:

> Landlord hereby consents to the foregoing Assignment. Landlord hereby grants Assignor a novation with respect to, and a release from, all obligations, duties, conditions and liabilities under the Lease occurring on or after the Closing Date, including, without limitation, those that otherwise would arise under the Lease as a result of the Assignment.

### b. Post-Petition Conduct of the Parties

The Petition Date was November 5, 2008. Immediately after the filing of the case, Mr. Gregory, who was a representative of the landlord, changed the locks in the building. On November 10th, the Trustee sought to gain access to the property and discovered the locks had been changed. On November 11th the Trustee had a telephone conversation with Mr. Gregory in which Mr. Gregory stated that he had arranged for the Trustee to inspect the property on November 11th. The Trustee was denied further access to the building until December 17th and 18th. In early January, 2009, the Trustee caused the Debtor's records to be removed from the building and has had no further access to the building.

During the November 11th telephone conversation, Mr. Gregory stated that he had changed the locks in order to preserve records he needed for an ongoing lawsuit. He also told the Trustee "not to worry about the rent, because he was the landlord, and he was most concerned about the preservation of the records for his lawsuits."[2]

---

[2] Hrg Trans. at 43 (Mr. Miller).

## LEGAL DISCUSSION

**a. The Assignment And Assumption Is Limited To Suite 300 And Did Not Release The Debtor From The Remainder Of Its Beachway Lease Obligations.**

The Trustee argues that §1(b) of the Assignment and Assumption effected an assignment of the entire Beachway Lease to Ace Holding. Moreover, the Trustee notes that R&R consented to the assignment of the entire Beachway Lease, and agreed to release the Debtor from "all obligations, duties, conditions and liabilities under the [Beachway] Lease."

R&R contends that the Assignment and Assumption only affected Suite 300, and not the entire Beachway Lease as the first recital specifically references "the property located at 777 Beachway Drive, *Suite 300*." As Mr. Gregory — who at the time the Assignment and Assumption was executed was the Vice President of Ace Mortgage Funding as well as a principal of R&R — explained at the hearing:

> The intent of [the Assignment and Assumption] was so that the next day after the transaction was done, all of those employees now that were utilizing this space on the third floor were now Ace Holding Company employees, and so that Ace Holding Company would now pay Ace Mortgage Funding for the use of the space on the third floor, as opposed to Platinum Holdings. And that was the intent of the document.

Therefore, R&R asserts that the clear intent of the parties was to assign only Suite 300 to Ace Holding, and not the entire Beachway Lease.

The plain language of Section 2.2(b)(vii) of the Purchase Agreement and the recitals in the Assignment and Assumption support R&R's argument. The plain meaning of Section 1(b) of the Assignment and Assumption and Consent to Assignment and Release support the Trustee's position. As the documents are internally inconsistent, the Court cannot determine the meaning of the contract without reference to parol evidence.

As such, there are several reasons the Debtor did not assign the entire Beachway Lease to Ace Holding in the Assignment and Assumption and, thus, was not released from its obligations under the Beachway Lease. First, the Debtor continued to pay rent on the Beachway Lease even after the Assignment and Assumption was executed. If the Debtor had assigned the Beachway Lease to Ace Holding in the Assignment and Assumption, then it would not have continued to pay rent for over 2 years?

Second, the Debtor executed two additional amendments to the Beachway Lease *after* the Assignment and Assumption, and both times was identified as, and acted as, the Beachway Lease tenant. On November 14, 2007, after Ace Holding moved its offices from Suite 300 to the new corporate headquarters at 7820 Innovation Drive in Indianapolis, the Debtor amended its sublease with Archer Land Title, leasing additional space on the third floor to Archer. Then on November 17, 2007, the Debtor and R&R entered into the Second Lease Amendment, which amended the Beachway Lease directly. While the Second Lease Amendment merely fixed a typo, the substance of the change is irrelevant. The mere fact that the Debtor was still acting as the Beachway Lease tenant, and that R&R still recognized the Debtor as the Beachway Lease tenant, *strongly* suggests that the Beachway Lease was not assigned to Ace Holding in the Assignment and Assumption.

Third, when the Debtor filed for bankruptcy on November 5, 2008, it listed the Beachway Lease as an unexpired lease on Schedule G of its Statement of Financial Affairs. Ace Holding, which filed the same day as the Debtor, did not list the Beachway Lease on Schedule G of its Statement of Financial Affairs.

Thus, when one considers the parol evidence, it is clear that the Assignment and Assumption is limited to Suite 300 and did not release the Debtor from all of its Beachway Lease obligations.[3]

### b. The Post-Petition Rent Due Under The Beachway Lease Is Not An Actual And Necessary Expense Of Preserving The Estate And, Thus, Is Not Entitled To Administrative Priority.

This Court recently summarized its previous decision in *In re Sportman's Warehouse*, 436 B.R. 408 (Bankr. D. Del. 2009), which set forth the law governing whether a landlord is entitled to an administrative expense for post-petition rent:

> In determining whether a claim is entitled to administrative status under section 503(b)(1)(A), courts apply a two-part test: "(1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction."
>
> ***
>
> "[A] debtor's use and occupancy of leased premises post-petition is an actual and necessary expense of preserving the estate." Because the debtors in *In re Sportsman's Warehouse* had been occupying all three landlords' premises post-petition, the Court held that, despite the fact that none of the landlords had been billed for the real estate taxes yet, the debtors' "use and occupancy of the premises gives rise to an actual and necessary expense of the estate" under section 503(b)(1). The Court did note that "while the rent is an actual and necessary expense, use and occupancy of the premises may provide little or no benefit to the estate." However, the Court made clear that "[t]he amount of the benefit to the estate is presumed to be the contract rate of rent."[4]

In all the cases in which a court has granted an administrative expense to a landlord, the debtor has been engaged in the use and occupancy of the premises. That is not the case here. Indeed, the R&R actively prevented the

---

[3] In making this decision the Court is not relying on the testimony of Mr. Gregory at the hearing.
[4] *In re Goody's Family Clothing, Inc.*, 443 B.R. 5, 19-20 (Bankr. D. Del. 2010) (internal citations omitted).

9

Trustee from using and/or occupying the premises.  Thus, as a matter of law, R&R is not entitled to an administrative priority on its claim for post-petition rent.[5]

## CONCLUSION

For the foregoing reasons, R&R Holdings, LLC's Motion For Allowance And Payment Of Post-Petition Administrative Rent And Related Charges is denied.  An order will be issued.

---

[5] The Court notes that a key component in its ruling is that the landlord took possession of the premises and, for all intents and purposes, prevented the Trustee from using the premises.  This is fundamentally different from a situation where a debtor may not be actively using the premises but still has access.  Whether a landlord may have an administrative claim in such an instance is an issue for another day.